Argued February 26, affirmed March 19, 1929.

THOMAS McKEAG *v.* PORTLAND ELECTRIC POWER COMPANY.

(275 Pac. 667.)

For appellant there was a brief over the name of *Messrs. Griffith, Peck & Coke* with an oral argument by *Mr. Cassius R. Peck.*

For respondent there was a brief over the names of *Mr. McDannell Brown* and *Mr. C. M. Idleman* with an oral argument by *Mr. Brown.*

BROWN, J.—In substance, plaintiff's evidence is that, on December 25, 1926, at about 6:00 p. m., he was driving his Ford car in an easterly direction along a public street in the City of Portland; that when he reached the intersection of Foster Road and 56th Street, S. E., he attempted to make a reverse turn, and, in so doing, crossed the street-car tracks maintained by defendant on Foster Road. It is asserted and well supported by the testimony that the street is open and well lighted at this point. Plaintiff's story is that immediately prior to turning his car on to the street-car tracks, he saw approaching a street-car then about 250 feet distant, but failed to

observe that it was traveling at an unusual rate of speed. He says that, in order to make the reverse turn, it was necessary for him to reduce the speed of his Ford to about eight miles an hour, and that, as he turned upon the track, he was again required to slow down in order to permit another automobile to pass. This caused his engine to stall on the track, and before he could start it and drive off the track, or get out of the way, the street-car, which was traveling at approximately 35 miles an hour, crashed into the right side of his car just back of the middle, throwing the car violently around and injuring plaintiff. With Plaintiff's Exhibit "A" before him, he testified:

"Well, I came up Foster Road here and I made a turn on here (indicating), and I slowed—slowed up a little bit to allow a man to pass me there (indicating); and my engine stalled—my front wheels was about on the car track here (indicating), and my engine stalled, and I coasted over until—the full length of the machine—well, my machine stopped, and I reached down and pulled up the emergency, and when I looked up, why, after I pulled my emergency I didn't even have a chance to get out,—out of the machine, for an inbound car come up here to hit me; and I don't know anything about—I don't know anything else about what happened from that time on."

Mrs. Wilbur Carlson testified that the street-car was traveling at a rate of 30 or 35 miles an hour when it struck the plaintiff. She further testified to facts indicating that the motorman "thought Mr. McKeag was going to get off, and did not try to stop."

For the purpose of proving that the stalled car was the proximate cause of the accident, the defend-

ant called plaintiff to the stand and asked him the following question:

"Q. So, if you hadn't stalled on the track here, there would not have been a collision, would there? A. I don't think so, no."

Defendant called to the stand its motorman, and three persons who were passengers at the time of the accident. The testimony of these witnesses is to the effect that the street-car was operated at a reasonable and lawful rate of speed; that the Ford car stalled on the track when the street-car was not more than a length away, and that the motorman did everything within his power to stop the car and prevent the accident.

But this court is concerned only with the question of the sufficiency of plaintiff's testimony to take the case to the jury.

1. In considering a motion for directed verdict, every fair and legitimate inference which can arise from the evidence must be made in favor of the plaintiff. So, in passing upon this defendant's motion for a directed verdict, all competent evidence in the record was entitled to consideration by the jury in the light most favorable to the plaintiff: *Farrin* v. *State Industrial Accident Commission,* 104 Or. 452 (205 Pac. 984), and the Oregon cases there cited.

As to the duty of a motorman in the operation of a street-car in his charge, with relation to other traveling vehicles, the editors of Ruling Case Law thus state the law:

"It is the duty of the motorman to keep a lookout for vehicles on the track, and to give timely warning of the approach of the car, when he discovers, or in the exercise of ordinary care by keeping a lookout

should discover, the presence of vehicles on the track in a place of apparent peril, and to exercise ordinary care to prevent a collision, and a failure to do so is negligence." 25 R. C. L., Street Railways, § 113.

2. In the case at bar, though both the plaintiff and the defendant company had a right to use Foster Road, neither had the exclusive right thereto; and all persons using that thoroughfare owed to all others the duty of exercising ordinary care in its use, so as not to injure any person: *Donohoe* v. *Portland Ry. Co.*, 56 Or. 58 (107 Pac. 964); *Palmer* v. *Portland R. L. & P. Co.*, 56 Or. 262 (108 Pac. 211); *Emmons* v. *Southern Pac. Co.*, 97 Or. 263 (191 Pac. 333). See, also, *Oklahoma Union Ry. Co.* v. *Burgess*, 124 Okl. 233 (254 Pac. 969).

Questions similar to the one before us have frequently been passed upon in other jurisdictions. A case almost identical in point of fact with the case under consideration is *Unger* v. *San Francisco-Oakland Ter. Rys.*, 61 Cal. App. 125 (214 Pac. 510), where it was said:

"The driver of an automobile or other vehicle stopped for any temporary cause in front of an approaching street car cannot be held guilty of negligence as a matter of law if he does not desert his vehicle, at least until it is reasonably certain that an impact is unavoidable. He has a right to assume that those in charge of the operation of the approaching street car, seeing his predicament, will not recklessly run him down. He has a right to make a reasonable effort to start his vehicle, if it is susceptible of being started, and to save it and its occupants from injury. Whether his acts in so doing or attempting to do were unreasonable and negligent would be a question of fact, which it would be the province of the jury to determine, in view of all of the circumstances of the particular case."

In *Hassam* v. *United Elec. Rys. Co.* (R. I.), 135 Atl. 36, the court held that where a driver testified that when his automobile became stalled on the track a street-car was a hundred feet away, and the motorman testified that he stopped within 40 feet after he saw the automobile, it was error to direct a verdict for defendant, because the jury might have found that the motorman could have stopped the car before reaching the automobile.

In *Grissom* v. *Seattle,* 123 Wash. 131 (212 Pac. 264), it was held that the question of the contributory negligence of the driver of an automobile stalled on a street-car track, in attempting to push it off the track, and in failing to flag the street-car, was held to be for the jury, it appearing that he did wave his arms, and that the street light, the automobile and car headlights were burning.

Again, in *Brien* v. *Detroit United Ry. Co.,* 247 Fed. 693, it was held that it was necessarily negligent for one to remain a short time in an automobile which had become stalled on a street-car track after seeing an approaching car, while his companion alighted to crank the engine.

See, also, *Oklahoma Union Ry. Co.* v. *Burgess, supra.*

These cases, with others pertaining to the mutual obligations of drivers of automobiles and operators of street-cars, are set out in 1 Berry, Automobiles (6 ed.), Section 784.

The defendant's able counsel predicates its defense upon the holding of this court in *Emmons* v. *Southern Pac. Co., supra,* wherein the late Justice BURNETT, in a learned discourse with relation to the negligence

of one of the parties thereto and the contributory negligence of the other, among other things, wrote:

"It would be poor answer to a charge of contributory negligence to say: 'It is true, I saw the train coming at a high rate of speed, within 400 feet of the crossing, yet, instead of either stopping or hurrying along across the track, I proceeded very slowly, and so managed my engine that I stopped it and stalled the car on the track immediately in front of the train.'"

The Emmons case should not be considered as controlling here. That case presents a different state of facts, different pleadings, and, furthermore, this court sustained the ruling of the trial court in denying a motion for a directed verdict.

3. The question as to whether the plaintiff herein acted as an ordinarily prudent man would act under like circumstances, or was guilty of contributory negligence, was a question of fact for the jury to determine, and not one of law for the court: *Kirby* v. *Southern Pac. Co.*, 108 Or. 290 (216 Pac. 735), and the cases there cited. The following excerpt from 1 Cyclopedia of Automobile Law, Blashfield, p. 905, is pertinent to the facts shown in this case:

"An automobile driver, seeing a street car coming, is not bound to stop and wait for it to pass, under all circumstances. If he may reasonably believe, as an ordinarily prudent person, that he can safely cross ahead of a car which he sees to be approaching, it is not negligence for him to attempt to do so; whether he has such reasonable grounds being usually for the jury, depending upon, among other things, the distance the car is from him, and the speed at which it and his machine are running."

See, also, 2 Cyclopedia of Automobile Law, Blashfield, p. 1771, § 11.

This case should be affirmed. It is so ordered.

AFFIRMED.

COSHOW, C. J., and BEAN and BELT, JJ., concur.