Argued November 15, 1929; reargued March 12; reversed April 22; rehearing denied May 20, 1930.

## DORFMAN *v*. PORTLAND ELECTRIC POWER CO.
### (286 P. 991)

*Cassius R. Peck* of Portland (Griffith, Peck & Coke of Portland on the brief) for appellant.

*Barnett H. Goldstein* of Portland for respondent.

BELT, J. This is an action to recover damages for personal injuries resulting from a collision between a horse-drawn junk wagon and a street car owned and operated by the defendant company. Plaintiff was driving north on the right side of Williams avenue in the city of Portland. He says, in substance, that when he reached the center of the intersection of Williams avenue and Tillamook street he saw the street car about one block away coming towards him on Williams avenue; that after he turned to the left around the center of the intersection for the purpose of going west on Tillamook street and had gone about 20 or 25 feet, he was struck by the street car, thrown from his wagon, and sustained injuries for which damages are alleged. Defendant company asserts that plaintiff did not go around the center of the intersection but that he "cut the corner"; that before he reached the south property line of Tillamook street he turned across Williams avenue in a northwesterly direction intending to go west on Tillamook street; that when the front of the street car reached the center of the intersection, the defendant first discovered plaintiff who was about 30 or 40 feet away. The following special verdict was submitted:

"We, the jury, duly impanelled and sworn to try the above entitled action, in response to the following questions do make the following answers and findings of fact:

"(1) Question. Did the plaintiff, in turning to the left from Williams avenue to drive westerly upon Tillamook street, fail to go beyond the center of the intersection of Williams avenue and Tillamook street; in other words did the plaintiff, in turning from Williams avenue into Tillamook street, cut the corner? (Answer yes or no.)

"Answer. Yes.

"If you answer "Yes" to the foregoing question, then answer the following question:

"(2) Question. If the plaintiff had gone beyond the center of the intersection in turning from Williams avenue into Tillamook street, would the accident have occurred? (Answer yes or no.)

"Answer. No.

"(3) Question. Did the motorman of the street-car after he had actual knowledge of the peril of the plaintiff, exercise reasonable care to avoid the accident? (Answer yes or no.)

"Answer. No."

From a judgment entered in favor of plaintiff, the defendant appeals, asserting there is no evidence to support the last clear chance doctrine and that it was error to submit such issue to the jury.

In view of the finding of the jury that plaintiff "cut the corner" and was therefore guilty of contributory negligence, it is plain that this judgment can not be sustained unless the last clear chance doctrine applies. Notwithstanding plaintiff's negligence placed him in a position of peril, it would, under a humanitarian doctrine, be incumbent upon the street-car company to exercise due care to avoid injuring him after discovering his perilous position. The vital questions are: Is there any evidence tending to show that, after the motorman had actual knowledge that plaintiff was in a position of danger, he failed to exercise due care to avoid injuring him? If this question be answered in the affirmative, we should next inquire: Had plaintiff's negligence ceased at the time of actual impact or was it a continuing, operative factor which concurred with the subsequent negligence of the defendant company in causing the injury of which complaint is made?

■■ Under the well established rule in this jurisdiction, it will not suffice to invoke the doctrine that the

motorman, by the exercise of reasonable diligence, ought to have known that plaintiff was in a position of danger. Actual knowledge is essential: *Morser v. Southern Pacific Co.,* 110 Or. 9 (222 P. 736) ; *Stewart v. Portland Ry. L. & P. Co.,* 58 Or. 377 (114 P. 936, 63 Am. & Eng. R. Cas. (N. S.) 794) ; *Scholl v. Belcher,* 63 Or. 310 (127 P. 968) ; *Richardson v. Portland Ry. L. & P. Co.,* 70 Or. 330 (141 P. 749) ; *Long v Pacific Ry. & Nav. Co.,* 74 Or. 502 (144 P. 462, 145 P. 1068, L. R. A. 1915F, 1151) ; *Twitchell v. Thompson,* 78 Or. 285 (153 P. 45) ; *Emmons v. Southern Pacific Co.,* 97 Or. 263 (191 P. 333) ; *Marshall v. Olson,* 102 Or. 502 (202 P. 736). True, it is not necessary to establish such knowledge by direct and positive evidence. The jury is permitted to draw any reasonable inference from the facts proven. The mere fact, however, that there was no obstruction to the motorman's vision and that he could have seen had he looked does not warrant the inference of actual knowledge. To so hold would be a repudiation of the rule above stated which has been so long established. In the instant case the record is absolutely devoid of any evidence of knowledge on the part of the motorman.

■ Assuming, however, that there is some evidence of actual knowledge, it is clear there was no cessation of plaintiff's negligence at the time he was struck by the street-car. The finding of the jury is conclusive that plaintiff ''cut the corner.'' His negligence never ceased but continued up to the very time of collision. We are not dealing with a case where the vehicle had broken down or was stalled on the track as in *Emmons v. Southern Pacific Co.,* supra, and *McKeag v. Portland Electric Power Co.,* 128 Or. 614 (275 P. 667). We are not confronted by a condition brought about through negligence of the plaintiff, from which he could not

extricate himself. The evidence clearly and undisputably shows that plaintiff's negligence was a contributory factor in bringing about his alleged damage. As stated in the Emmons case:

"The doctrine is also affected by the condition that it will not apply if the negligence of the plaintiff continues operative at the time of collision."

The authorities are legion to the same effect. See exhaustive note 63 A. L. R. 44. Plaintiff started out to cut the corner and he continued in this violation of the law of traffic up to the very moment he was struck. Aside from the question of knowledge—upon which the authorities in other jurisdictions are in conflict—it is clear that plaintiff is precluded from recovery on account of his contributory negligence. The last clear chance doctrine is not involved. *Emmons v. Southern Pacific Co.*, supra, was remanded for a new trial to give plaintiff therein an opportunity properly to plead the last clear chance doctrine. The court said:

"Although the plaintiff might be considered negligent in not attempting to start her car after it stopped on the track, yet a jury might think she did not have time before the train collided with her machine."

The doctrine was thoroughly reviewed in the Emmons case and what was said there leads us to the conclusion there can be no recovery here.

■ We are unable to agree with the contention that defendant, having joined in the submission to the jury of the question relative to the last clear chance doctrine, is deemed to have waived this assignment of error. At the conclusion of the taking of testimony, defendant moved to have the court withdraw from the consideration of the jury such issue and also specifically requested the court to instruct the jury that this doc-

trine was not involved. The court having held against defendant, we think defendant could well join in the submission of the question without being deemed to have waived the point. It is somewhat analogous to a case where a defendant, after the denial of a motion for nonsuit, offers testimony in its own behalf. Under such circumstances this court has held that there is no waiver and that the failure of the court to grant a non-suit may be assigned as error on appeal: *Cram v. Powell,* 100 Or. 708 (197 P. 280) ; *Dayton v. Fenno,* 99 Or. 137 (195 P. 154).

Eliminating the last clear chance doctrine, it follows, in view of the special verdict, that plaintiff was guilty of contributory negligence and therefore can not prevail.

The judgment of the lower court is reversed and an order will be here entered dismissing the action.

————

COSHOW, C. J. (dissenting). This is an action to recover damages for injuries received by plaintiff in a collision with a street-car belonging to defendant. No question of pleading is involved. Plaintiff recovered judgment for $500 and his costs and disbursements. From this judgment defendant appeals. It assigns three alleged errors. First, defendant assigns as error the court's refusal to withdraw from the jury consideration of negligence on the part of defendant under the last clear chance doctrine; second, defendant assigns error in the court's refusal to enter judgment in favor of defendant upon a special verdict; third, defendant assigns error in the court's refusal to set aside the judgment in favor of plaintiff and enter judgment in favor of defendant. Defendant places his main reliance in this appeal on its contention that there was no evidence entitling plaintiff to an instruction on the last clear chance doc-

tine. Among other proceedings at the trial, the following questions were submitted to the jury and answers returned as follows:

"1. Question. Did the plaintiff, in turning to the left from Williams avenue to drive westerly upon Tillamook street, fail to go beyond the center of the intersection of Williams avenue and Tillamook street; in other words did the plaintiff, in turning from Williams avenue into Tillamook street, cut the corner? (Answer yes or no.)

"Answer. Yes.

"If you answer 'Yes' to the foregoing question, then answer the following question:

"2. Question. If the plaintiff had gone beyond the center of the intersection in turning from Williams avenue into Tillamook street, would the accident have occurred? (Answer yes or no.)

"Answer. No.

"3. Question. Did the motorman of the street car, after he had actual knowledge of the peril of the plaintiff, exercise reasonable care to avoid the accident? (Answer yes or no.)

"Answer. No."

Defendant joined the plaintiff in requesting the jury to make return to said questions.

Near the conclusion of defendant's brief is this language:

"Therefore, the only pivotal point in this case is as to whether or not the plaintiff was entitled, under the evidence and law of the case, to the benefit of the last clear chance doctrine; the decision of this court on that question under our assignment of error No. 1 is decisive of this case; if this court holds that the last clear chance doctrine was, under the evidence of this case and under the law applicable thereto, properly submitted to the jury, then the judgment should stand; otherwise the lower court should be directed to set aside the judgment and enter judgment in favor of the defendant."

Respondent accepts the challenge and joins issue on that one point. Appellant is basing its contention largely on this expression of this court in *Emmons v. Southern Pac. Co.,* 97 Or. 263, 283 (191 P. 333), as follows:

"It is settled by the decisions of this court that the rule of last clear chance applies only where the defendant has actual knowledge of the perilous position of the plaintiff. (Cases cited.)."

The opinion in the Emmons case was written by the late Mr. Justice BURNETT and is thoroughly discussed and logically reasoned.

Defendant insists because the motorman on its street-car testified that he did not see the plaintiff's vehicle until defendant's car was in the intersection, and it was then too late to prevent a collision the last clear chance doctrine does not apply. Defendant argues that inasmuch as the motorman's testimony was not directly disputed, and could not be, and inasmuch as there was no direct testimony that the motorman saw plaintiff's vehicle sooner, the trial court was bound by the uncontradicted testimony of defendant's motorman. There was testimony, however, not only from the defendant but by other disinterested parties to the effect that the motorman had a clear vision for the greater part of a block before entering the intersection, and that plaintiff, in crossing defendant's track, was in plain view. This court held in the Emmons case that it was not sufficient for plaintiff to prove that defendant's servant could have seen, by the exercise of ordinary care and prudence, plaintiff's peril on its tracks in time to have avoided a collision. Plaintiff must go further and satisfy the jury that defendant's servant actually saw plaintiff's peril in time

to have avoided injuring plaintiff in order to make applicable the last clear chance doctrine. The court accepts as the law the opinion in the Emmons case. It does not follow from that, however, that the jury was bound to believe the motorman. It does not necessarily follow that the jury could or should not consider other evidence of defendant's servant having seen plaintiff in his perilous position. It does not follow that the jury should not take into consideration the circumstances, conditions and environment in weighing the evidence in the case.

Mr. Justice BURNETT said in the Emmons case, page 293:

"It is a close question of fact as to whether the defendant knew of her peril in time to avoid the injury by subsequent diligence."

This was said after the learned jurist had pointed out that plaintiff's complaint in the Emmons case was insufficient to support the doctrine of the last clear chance. No question is raised here about the pleading. The learned jurist in the Emmons case holds that the question of whether or not defendant's motorman saw plaintiff in his perilous condition was a question of fact to be determined by the jury, not only from the testimony of the motorman but from the other evidence, including all of the conditions manifest at the scene of the collision at the time.

The Emmons case does not require an admission on the part of defendant or its servants in order to have evidence that defendant had knowledge of the perilous condition of plaintiff in time to have avoided a collision. The Emmons case does not demand that some means be found to look into the mind of defendant's servant to determine whether or not the servant had actual knowledge of plaintiff's perilous position.

In the instant case the jury was required to determine whether or not the motorman testified truly. The jury was required to determine whether all the conditions contributing to the collision and combining to cause the injury established the motorman's negligence under the last clear chance doctrine. From what has been said heretofore and from the statement of the pivotal element in the case, this conclusion decides the case. We commend the learned attorneys for defendant for thus confining, limiting and restricting the case to the one question. Defendant was not entitled to judgment on the special verdict.

In the Emmons case, page 294, we read:

"There is enough in the testimony, however, to have carried this case to the jury on the question of fact involved. For instance, on behalf of the plaintiff, as showing her position of peril, we have the fact that she was stationary on the track. There is the testimony of her brother that he stood up in the car and waved his hand as if to stop the train. On the other hand, we have the presumption, already referred to, that the engineer was entitled to rely upon, to wit, that the plaintiff would get off the track before the train arrived; that she would take care of herself; and that there was nothing to indicate her danger except as stated. It was for the jury to weigh these opposing fragments of evidence, and determine by the preponderance of them whether the defendant actually perceived the danger of the plaintiff and her inability to extricate herself, in time to avert the injury. This, of course, leaves out of view the question of whether the negligence of the plaintiff continued operative at the time of the collision. Thus restricted, the case on this point presents a situation where there is a question of fact to be determined, namely, whether the defendant's motorman discovered the position of peril of the plaintiff in time to avoid the injury by subsequent diligence."

Applying this doctrine to the instant case, we have the evidence that plaintiff was moving away from, not into, the place of danger at the time his truck was struck. The question of fact is, did defendant's motorman discover the plaintiff when he was crossing the track at the intersection of the street in time to have avoided striking plaintiff's truck. That is a question of fact. The situation would be different if plaintiff was moving into the dangerous position instead of moving away from it when plaintiff's vehicle was struck.

In the Emmons case plaintiff was held to be negligent in two particulars: First, in driving on the track in front of the on-coming train; second, in so managing her automobile as to cause it to stall on the track.

"As to a question of negligence on one side and contributory negligence on the other, the case is plain that the plaintiff's negligent management of the automobile contributed directly to her injury. If, instead of loitering along at a slow rate of speed, she had driven across the track promptly, the collision would not have occurred. But it is manifest that she not only loitered on the way, but so managed her machine as to stop the engine at the point of greatest danger. Such faulty control of the vehicle on the part of the railway company would be the greatest negligence. The same rule applies to the other party."

Instead of being guilty of negligence in stalling on the track in front of the on-coming street-car, plaintiff, in the instant case, is charged only with the negligence of "cutting the corner," because he did not pass the center of the intersection before making his turn to the west. According to the argument, plaintiff continued to move and, therefore, his negligence was continuing and the last clear chance doctrine does not apply. If he had so managed his horse as to stall in

front of the on-coming car that doctrine would apply. We cannot accept such a line of reasoning. Plaintiff was crossing the track as he had a right to do and was trying to get across before the street-car could strike him. The street-car struck the rear end of plaintiff's vehicle. A fraction of a second later plaintiff's vehicle would have been clear of the track so that there would have been no collision. There was testimony that defendant did not diminish the speed of the street-car until after it entered the intersection. A very slight reduction of speed after defendant could have seen plaintiff's perilous position would have avoided the collision. The only disputed question of fact is did the motorman actually see plaintiff's dangerous position? That he could have seen him is not disputable. Both by the instructions to the jury and the special verdict the question "did he see him" is put squarely before the jury. Whether or not the driver of the street-car saw plaintiff in his perilous situation is a question of fact. It can not be determined as a matter of law. The doctrine of the last clear chance applies only and when it is proven to the jury that defendant's employee actually saw the perilous condition of plaintiff and could have avoided it by the exercise of reasonable care. The jury was clearly instructed by the learned court to that effect. That question was specifically submitted to the jury and decided against defendant, and its verdict is binding on this court.

Defendant, having joined with the plaintiff in asking that question No. 3 be submitted to the jury, should not be heard now to object to its submission. As we now understand defendant's position, it does not raise that question except as it is necessarily involved in the larger question of whether or not there was any evidence permitting the last clear chance doctrine to be

submitted to the jury. Defendant's position is that there being no evidence making applicable to the determination of the action the last clear chance doctrine, the question should not have been submitted nor should the answer be deemed of any consequence. Defendant's position would be correct if there was no evidence in the case to support that doctrine.

We find there was sufficient evidence in the testimony of disinterested parties and in the circumstances surrounding the collision to warrant submitting the case to the jury. This court is bound by the jury's verdict on the facts. The judgment should be affirmed.